## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## FORT WORTH DIVISION

| | | |
|---|---|---|
| **MONTERIO DESHA HILL,** | § | |
| **Petitioner,** | § | |
| | § | |
| **v.** | § | **Civil Action No. 4:12-CV-306-Y** |
| | § | |
| **RICK THALER, Director,** | § | |
| **Texas Department of Criminal Justice,** | § | |
| **Correctional Institutions Division,** | § | |
| **Respondent.** | § | |

## FINDINGS, CONCLUSIONS, AND RECOMMENDATION
## OF THE UNITED STATES MAGISTRATE JUDGE
## AND NOTICE AND ORDER

This cause of action was referred to the United States Magistrate Judge pursuant to the provisions of 28 U.S.C. § 636(b), as implemented by an order of the United States District Court for the Northern District of Texas. The Findings, Conclusions, and Recommendation of the United States Magistrate Judge are as follows:

## I. FINDINGS AND CONCLUSIONS

### A. NATURE OF THE CASE

This is a petition for writ of habeas corpus by a state prisoner under 28 U.S.C. § 2254.

### B. PARTIES

Petitioner Monterio Desha Hill, TDCJ-ID #1512861, is a state prisoner in custody of the Texas Department of Criminal Justice, Correctional Institutions Division, in Kenedy, Texas.

Respondent Rick Thaler is the Director of the Texas Department of Criminal Justice, Correctional Institutions Division.

## C. FACTUAL AND PROCEDURAL HISTORY

On May 21, 2008, a jury found petitioner guilty on one count of possession with intent to

deliver cocaine (Count One) and one count of possession with intent to deliver methamphetamine

(Count Two) in the Criminal District Court Number Two of Tarrant County, Texas, Case No.

1099511D. (Clerk's R. at 34-35, 60-67) The next day, at the conclusion of the punishment phase,

the jury found the repeat offender notice in the indictment true and assessed petitioner's punishment

at life imprisonment and a $10,000 fine on Count One and sixty years' imprisonment and a $10,000

fine on Count Two. (*Id.* at 52, 54) Petitioner appealed his convictions, but the Second District Court

of Appeals of Texas affirmed the trial court's judgment, and the Texas Court of Criminal Appeals

refused petitioner's petition for discretionary review. (01State Habeas R. at 107; 02State Habeas R.

at 107[1]) *Hill v. State*, 303 S.W.3d 863 (Tex. App.–Fort Worth 2009); *Hill v. State*, PDR No. 295-10.

Petitioner also filed two state applications for writ of habeas corpus, one for each conviction, raising

the claims presented herein, which were denied by the Texas Court of Criminal Appeals without

written order on the findings of the trial court. (01State Habeas R. at cover; 02State Habeas R. at

cover) This federal petition for writ of habeas corpus followed.

The appellate court set forth the factual background of the case as follows:

> On January 29, 2008, officers for the Fort Worth Police Department's gang
> unit were patrolling on the east side of Fort Worth. According to Sergeant Stephen
> Enright, the area had recently been plagued with a rash of robberies. As a result,
> there were roughly seven officers patrolling as a group on January 29–some in
> marked police vehicles and others in unmarked police vehicles. Enright testified at
> trial that Hill's SUV originally caught his attention because it pulled into the back of
> a McDonald's parking lot and stopped, but no one got out of the vehicle. After a

---

[1]"01State Habeas R." refers to the state court record in petitioner's state habeas application
No. WR-76,721-01; "02State Habeas R." refers to the state court record in his state habeas
application No. WR-76,721-02.

short time, Hill's SUV drove away from McDonald's, only to enter the parking lot of a convenience store about a block away, remain still for a moment, and then eventually continue through the parking lot and back into a parking spot in front of the store–again, no one got out of the vehicle. During his observation of Hill's SUV, Enright noticed that the SUV had dark tinting on its windows. Enright believed the tinting was illegal. After staying parked in the convenience store parking lot for several minutes, Hill's SUV left the convenience store, traveled a short distance, and made a left-hand turn into a nearby shopping center. Enright said that Hill failed to use his signal during the turn.

Enright initiated a traffic stop. As several police cars pulled up, Hill, who was driving the SUV, and the front passenger opened their doors and exited the vehicle. They both left their doors open. Officer Jesus Alanis testified that he observed Hill exit his SUV. Alanis said that as he exited, Hill turned to look at Enright and his partner, who had pulled in front of Hill, and that Hill "reach[ed] towards his shirt, kind of reaching under his shirt on his back." Alanis said that he suspected Hill was reaching for a weapon, so Alanis drew his gun and shouted at Hill to "let me see [your] hands[!]" After Alanis drew his gun, several of the other officers, including Enright, drew their weapons as well. One of the officers placed handcuffs on Hill. The officers also conducted a pat-down of Hill. Alanis said that as soon as the officers determined that Hill did not have a weapon, the officers holstered their weapons and continued the traffic stop, which included determining whether there were other occupants of the SUV.

Alanis said that "the tint and the interior of the cabin was pretty dark, so I couldn't see if anybody was back there." He eventually ascertained that two more passengers were in the back of the SUV, and he had them exit the SUV.

Enright testified that when he approached Hill's SUV, the driver's side door was open because Hill had opened it when he exited. Enright said he simply looked into the vehicle and observed a brown paper bag wedged between the driver's side seat and the center console. According to Enright, "[I]n that brown paper bag visible was a clear plastic [baggie] containing an off-white rock-like substance, which through my experience led me to believe it was crack cocaine." Alanis testified that Enright signaled to him that he could see illegal drugs in the SUV. Alanis said that Enright pointed to the front seat, and from Alanis's view, he could see "a brown paper bag that appeared to be semi-torn open. There was a clear plastic [baggie] container and you could see some off-colored-off-white colored rocks. Looked like crack cocaine." The officers arrested Hill for possession of a controlled substance with intent to deliver.

After Hill was arrested, the officers continued to search Hill's SUV. The search revealed another bag in the passenger floorboard that contained ecstacy,

3

marijuana, and a digital scale. The vehicle search revealed a container that looked like a salt shaker that had a "false lid" that when opened contained roughly twenty pinkish-orange colored pills later discovered to be ecstacy. The officers also discovered a substantial amount of cash–$1,074 in varying denominations–on the appellant. The officers further found a fully loaded .40 caliber automatic pistol next to the air cleaner under the hood of Hill's SUV. The officers also determined that the tint on the windows of Hill's SUV was illegally dark.

Hill's trial counsel did not file a written motion to suppress. Instead, after trial began and after the prosecutor asked Enright a few questions, Hill's trial counsel verbally moved to suppress the evidence found in Hill's SUV on the ground that the search of the SUV was the "result of an illegal arrest." The trial court overruled trial counsel's motion. The trial continued. Enright, Alanis, Officer Perales, and Corporal Combs all testified to their accounts of the evening. That testimony included, without objection, the discovery of the gun under the hood of Hill's SUV. But when the prosecutor offered photographs of the gun, trial counsel objected on the basis that the gun was not relevant to the charges. The trial court overruled the objection. Later, during closing arguments, the following colloquy took place:

> [Prosecutor to Jury]: And, you know, the only reason why they could see who was in that car at the time they did, because these people had a guilty conscience. [Hill] had a guilty conscience and when he sees these officers pulling up on him, I got to get out of this car because my dope is in here, I'm going to distance myself and he starts getting out. The front seat passenger who also knows there's dope in the car, she distances herself and starts walking away. That's what they're doing, because they know what's in that car.
>
> And don't tell me that someone from the backseat threw this dope up in the front seat or stuffed it up in that front seat while he was sitting there. You think he wouldn't put up a fight and say, Man, don't put your dope on me. You know, that's not how it happened.
>
> [Defense counsel]: I–Judge, that's a comment on Defendant's failure to testify because it's a question that only he can answer.
>
> THE COURT: All right. That's– that's overruled. It's just final argument. Argument is not evidence, ladies and gentlemen.

*Hill*, 303 S.W.3d 863 at 868-70.

4

D. ISSUES

Petitioner brings seven grounds for habeas relief, wherein he claims he received ineffective assistance of trial counsel. (Pet. at 6-7 & Insert)

E. RULE 5 STATEMENT

Respondent believes that petitioner has exhausted his claims as required by 28 U.S.C. § 2254(b)(1) and that the petition is neither barred by limitations under 28 U.S.C. § 2244(d) nor subject to the successive- petitioner bar under 28 U.S.C. § 2244(b). (Resp't Ans. at 6-7)

F. DISCUSSION

*1. Legal Standard for Granting Habeas Corpus Relief*

Under 28 U.S.C. § 2254(d), a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a state court shall not be granted with respect to any claim that was adjudicated on the merits in state court proceedings unless he shows that the prior adjudication: (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court. 28 U.S.C. § 2254(d). A decision is contrary to clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court of the United States on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000); *see also Hill v. Johnson*, 210 F.3d 481, 485 (5th Cir. 2000). A state court decision will be an unreasonable application of clearly established federal law if it correctly identifies the applicable rule but applies it unreasonably to the facts of the case. *Williams*, 529 U.S. at 407-08.

Further, federal courts give great deference to a state court's factual findings. *Hill*, 210 F.3d at 485. Section 2254(e)(1) provides that a determination of a factual issue made by a state court shall be presumed to be correct. 28 U.S.C. § 2254(e)(1). Factual determinations by a state court are presumed correct absent clear and convincing evidence to the contrary, and a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state court proceeding. *See* 28 U.S.C. § 2254(d)(2), (e); *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003); *Williams*, 529 U.S. at 399. The applicant has the burden of rebutting the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1). Typically, when the Texas Court of Criminal Appeals denies relief in a state habeas corpus application without written opinion, it is an adjudication on the merits, which is entitled to this presumption. *Singleton v. Johnson*, 178 F.3d 381, 384 (5th Cir. 1999); *Ex parte Torres*, 943 S.W.2d 469, 472 (Tex. Crim. App. 1997).

### 2. Ineffective Assistance of Counsel

A criminal defendant has a constitutional right to the effective assistance of counsel at trial. U.S. CONST. amend. VI, XIV; *Strickland v. Washington*, 466 U.S. 668, 688 (1984). An ineffective assistance claim is governed by the standards set forth in *Strickland v. Washington*. 466 U.S. at 668. To establish ineffective assistance of counsel a petitioner must show (1) that counsel's performance fell below an objective standard of reasonableness, and (2) that but for counsel's deficient performance the result of the proceeding would have been different. *Id.* at 688.

A court must indulge a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance or sound trial strategy. *Id.* at 668, 688-89. Judicial scrutiny of counsel's performance must be highly deferential and every effort must be made to eliminate the

6

distorting effects of hindsight. *Id.* at 689. Strategic choices made by counsel after thorough investigation of the law and facts relevant to plausible options are virtually unchallengeable. *Id.* at 690.

Where, as here, a petitioner's ineffective assistance claims have been reviewed on the merits under the *Strickland* standard and denied by the state courts, federal habeas relief will be granted only if the state courts' decision was contrary to or involved an unreasonable application of *Strickland*, or if the state courts' decision is based on an unreasonable determination of the facts in light of the evidence before the state court. *Bell v. Cone*, 535 U.S. 685, 698-99 (2002); *Haynes v. Cain*, 298 F.3d 375, 379-82 (5th Cir. 2002). Under this standard, the state court's application of *Strickland* must be shown to be not only erroneous, but objectively unreasonable. *Yarborough v. Gentry*, 540 U.S. 1, 4 (2003).

Petitioner's claims his trial counsel was ineffective by failing to (1) have the state present factually and legally sufficient evidence to justify the traffic stop, (2) timely object, request an instruction to disregard, and move for a mistrial after the state "sandbagged" the defense by introducing evidence of the pistol, a deadly weapon, "that was waived during pretrial" and preserve the issue for appellate review, (3) effectively cross-examine the state's witness "whom actually placed handcuffs on [petitioner] and ascertain true and correct information from the witness whom wanted to give such testimony but was unreasonably halted by counsel," (4) investigate and call Donald Cowden and Brandon Howard, the other passengers in the car, to testify that he had been arrested and not merely detained when the drugs were discovered, (5) and (6) request an instruction under article 38.23 of the Texas Code of Criminal Procedure and the Fourth Amendment for the jury to disregard evidence if it believed, or had reasonable doubt, that the evidence was illegally obtained

7

after admonishing the jury on the issue, and (7) object to the state's jury argument "vouching" for the credibility of the police officers.  (Pet. at 6-7 & Insert)

The state habeas judge, who also presided at petitioner's trial, conducted a hearing by affidavit on petitioner's claims.  Petitioner was represented at trial by Abe Factor and Pamela Fernandez.  Abe Factor, licensed to practice law in Texas for 34 years and board certified in criminal law, testified as follows:

> I was retained to represent Monterio Desha Hill ("Hill") for the trial of his possession with intent to deliver case before Judge Wayne Salvant in Criminal District Court Number Two of Tarrant County.  Prior to trial, I was able to negotiate a plea-bargain recommendation of 15 years incarceration for Hill.  Hill rejected the offer and the case proceeded to trial, which took place on May 20, 21, & 22, 2008.

> In reference to Ground Number One of Hill's Application for Writ of Habeas Corpus, I respond as follows:

> Hill complain that I failed to require the State to present legally and factually sufficient evidence at trial that the initial detention by officers in his case was legal.  The record shows that the State presented legally and factually sufficient evidence that Hill committed a violation of the Transportation Code by failing to use a turn signal while making a left turn.  Further, the State presented evidence that the police officers had probable cause to believe that the vehicle being operated by Hill had window tint that was too dark, and therefore a violation of Texas law.  The detaining officers testified under oath that the traffic stop of Hill's vehicle occurred only after officers observed Hill's vehicle make a left turn without using his turn signal.

> In reference to Ground Number Two of Hill's Application for Writ of Habeas Corpus, I respond as follows:

> Hill complains that I allowed the admission of the handgun evidence even though the State had waived its deadly weapon allegation.  During the hearing on pretrial motions, I objected to the State's insufficient notice that it would seek a deadly weapon finding.  In response, the State agreed to waive its deadly weapon allegation.  During the examination of Corporal Coombs, who was one of the officers at the scene of Hill's traffic stop and who participated in the search of Hill's vehicle, evidence was presented that Coombs had located a handgun under the hood of Hill's vehicle.  Though I objected to the admission of the evidence of the handgun based on relevance, its lack of probity and its propensity to inflame the jury, the trial court overruled the objections and admitted the evidence.  Further, the evidence was

8

arguably admissible under the same transaction or contextual theory of admissibility. In an effort to mitigate the effect the handgun might have in the minds of the jury, I ensured that the jury instruction at guilt innocence had an extraneous offense charge.

In reference to Ground Number Three of Hill's Application for Writ of Habeas Corpus, I respond as follows:

Hill complains generally that I failed to establish that he had been placed under arrest prior to the search of his vehicle rather than merely detained. The evidence presented at trial showed that when Sergeant Enright effected a traffic stop of the vehicle being operated by Hill, Hill and another person sitting in the front passenger seat of Hill's vehicle quickly exited the vehicle, and that according to the evidence presented by the State at trial showed that the detaining officers secured Hill by handcuffing for purposes of officer safety, based on the gestures and actions described at trial which were made by Hill upon exiting the vehicle. The search of Hill's vehicle did not occur until officers observed contraband in plain view inside Hill's vehicle.

In reference to Ground Number Four of Hill's Application for Writ of Habeas Corpus, I respond as follows:

Hill complains generally about the fact that I did not call Donald Cowden ("Cowden") and Brandon Howard ("Howard") as defense witnesses at trial. Cowden and Howard were back-seat passengers in the vehicle that Hill was operating on the night of the arrest. However, Hill does not describe what testimony could be offered by either witness, nor does he explain how the hypothetical testimony of either witness would be beneficial to his case. Moreover, at no time prior or during trial did Hill ever mention Howard or Cowden to me, much less request that they be called as witnesses or provide information that either might have information which could be beneficial to Hill's defense. My argument at closing which claimed that the jury should have heard about Cowden and Howard was an attempt to circumscribe or minimize Hill's connection to the narcotics by raising in the minds of the jury the possibility that other persons were responsible for the presence of the narcotics.

In reference to Ground Number Five of Hill's Application for Writ of Habeas Corpus, I respond as follows:

Hill complains that I failed to request a jury charge regarding the inadmissibility [of] illegally-obtained evidence as contemplated by Article 38.23 of the Texas Code of Criminal Procedure. Hill primarily claims that the evidence may have been inadmissible due to an illegal detention. However, though I did qualify the jury panel during voire dire regarding their hypothetical ability to disregard illegally-obtained evidence, during the proceeding of the trial, testimony and evidence showed that Hill's detention was not illegal, that the initial handcuffing was not a full-blown

arrest, and that the search of Hill's vehicle during which the illegal narcotics were discovered did not occur until officers had observed illegal narcotics in plain view. Had I even requested such an instruction, it is my professional opinion that the trial court would have refused to grant the instruction, and the trial court's denial would not have been erroneous.

In reference to Ground Number Six of Hill's Application for Writ of Habeas Corpus, I respond as follows:

In Ground Number Six, Hill somewhat restates his complaint raised in Ground Five. As such, I will rely on the response set forth above in my response to Ground Five.

In reference to Ground Number Seven of Hill's Application for Writ of Habeas Corpus, I respond as follows:

Hill apparently complains that I failed to object to the prosecution's closing argument in which she allegedly "vouched" for the credibility of the testifying officers at trial. However, under Texas law, attorneys are allowed to make comments in argument that are proper as they are considered both a deduction from, and summation of, that evidence. Thus, in my professional opinion, any objection based on "vouching" would have been properly overruled by the trial court, and could possibly have impressed in the minds of the jury that the credibility of the testifying officers had been ruled on by the trial court.

(01State Habeas R. at 69-72) (record references omitted)

Pamela Fernandez, who assisted Factor, testified similarly as to Grounds One and Three:

In reference to Hill's Application for Writ of Habeas Corpus, I respond as follows:

Mr. Factor was in charge of the overall defense. The strategic decisions were made by him, and my cross-examinations were geared toward the strategic decisions which Mr. Factor had made after consulting with his client. My interactions with Hill were extremely limited, due to the fact that the direction of the defense was guided by Mr. Factor. My participation during the guilt-innocence phase of Hill's trial was for the most part limited to helping Mr. Factor in the selection of the jury and basic record-keeping and note-taking. My active participation was limited solely to the cross-examination of one of the detaining officers, Officer Perales; the publication by reading to the jury of Defense Exhibit Two; and a two minute-share of the closing argument for the defense.

My participation during the punishment phase of Hill's trial consisted of

10

conducting the cross-examination of two of the State's witnesses; and a portion of the closing argument.

Officer Perales was one of the officers who initially detained Hill after effecting a traffic stop on the night of the offense. After effecting the traffic stop, the evidence at trial showed that Hill exited his vehicle and appeared to be reaching into his waistband behind his back. Because of Hill's conduct and actions, he was temporarily detained and handcuffed for officer safety. Officer Perales was the officer at the scene who actually placed the handcuffs on Hill at the time. My cross-examination of Officer Perales dealt with the context and scope of his knowledge regarding the traffic offenses committed by Hill which provided probable cause for the initial traffic stop; why there was no on-car video camera of the traffic stop; what actions he observed of Hill which led to the handcuffing of Hill for the purposes of officer safety; and the status and disposition of the two backseat passengers who were accompanying Hill at the time of the traffic stop.

Due to my limited active role in Hill's trial, I believe that only Grounds One and Three of Hill['s] Application for Writ of Habeas Corpus are applicable to my participation. In reference to Ground Number One of Hill's Application for Writ of Habeas Corpus, I respond as follows:

Hill complains that I failed to require the State to present legally and factually sufficient evidence at trial that the initial detention by officers in his case was legal. The record shows that the State presented legally and factually sufficient evidence that Hill committed a violation of the Transportation Code by failing to use a turn signal while making a left turn. Further, the State presented evidence that the police officers had probable cause to believe that the vehicle being operated by Hill had window tint that was too dark, and therefore a violation of Texas law. The detaining officers testified under oath that the traffic stop of Hill's vehicle occurred only after officers observed Hill's vehicle make a left turn without using his turn signal.

In reference to Ground Number Three of Hill's Application for Writ of Habeas Corpus, I respond as follows:

Hill complains generally that I failed to establish that he had been placed under arrest prior to the search of his vehicle rather than merely detained. The evidence presented at trial showed that when Sergeant Enright effected a traffic stop of the vehicle being operated by Hill, Hill and another person sitting in the front passenger seat of Hill's vehicle quickly exited the vehicle, and that according to the evidence presented by the State at trial showed that the detaining officers secured Hill by handcuffing for purposes of officer safety, based on the gestures and actions described at trial which were made by Hill upon exiting the vehicle. The search of Hill's vehicle did not occur until officers observed contraband in plain view inside Hill's vehicle.

(*Id.* at 66-68)

Based on counsel's affidavits and the documentary record, the habeas court entered the

following relevant findings of fact and recommended denial of petitioner's habeas applications:

12.   Hon. Factor and Hon. Fernandez concluded that the State presented sufficient evidence that Applicant committed a traffic violation by failing to use a turn signal while making a left turn.

13.   Hon. Factor and Hon. Fernandez recall that the State presented evidence that Applicant's vehicle's window tinting was too dark and a violation of Texas law.

14.   Hon. Factor and Hon. Fernandez recall that the evidence at trial was that the search of the vehicle did not occur until after the officers observed contraband in plain view in the vehicle.

15.   Hon. Factor objected to the State's insufficient notice that it would seek a deadly weapon finding.

16.   The State waived the deadly weapon allegation as the result of Hon. Factor's objections.

17.   Corporal Coombs testified that he located a handgun in Applicant's vehicle.

18.   Hon. Factor objected to the handgun on the basis of relevance, its lack of probity, and its propensity to inflame the jury.

19.   The objections were overruled.

20.   Hon. Factor concluded that the handgun was admissible under the same transaction or contextual theory of admissibility.

21.   Hon. Factor requested an extraneous offense jury instruction at guilt innocence in an effort to mitigate the effect of the handgun.

22.   The evidence at trial was that Applicant was handcuffed for officer safety and that the search did not occur until after contraband was observed in plain view.

23.   Officer Perales was one of the initial officers that detained Applicant after the traffic stop.

12

24.   Officer Perales placed handcuffs on Applicant because Applicant and a passenger exited the car and Hill appeared to [be] reaching into the waistband at the back of his pants.

25.   Hon. Fernandez crossed Officer Perales on his scope and knowledge regarding traffic offenses committed by Applicant.

26.   Hon. Fernandez crossed Officer Perales regarding the fact that there was no on-car video of the traffic stop.

27.   Hon. Hernandez crossed Officer Perales regarding what actions he observed which led to Applicant being cuffed.

28.   Hon. Fernandez crossed Officer Perales regarding the disposition of the two passengers who were with Applicant at the time of the traffic stop.

29.   Donald Cowden and Brandon Howard were the two back-seat passengers.

30.   Applicant presents no affidavits from Cowden or Howard as to what their testimony would have been at trial.

31.   Hon. Factor denies that Applicant ever told him Howard or Cowden would provide information that was beneficial to his defense.

32.   Hon. Factor chose to argue at closing that the jury should have heard from Cowden and Howard [] [in] an attempt to minimize Applicant's connection to the drugs by raising a third party defense.

33.   Hon. Factor did not request special instructions on illegal detention or illegally obtained evidence because the evidence at trial was that the detention was not illegal, the handcuffing was not an arrest, and the search did not occur until the narcotics were observed in plain view.

34.   Hon. Factor concluded that a request for the special instructions would have been properly refused.

35.   Hon. Factor did not object to the State's "vouching" for the officers because he concluded that her argument was properly a summation and reasonable deduction from the evidence.

36.   Hon. Factor did not want to object to argument and have an overruling rule impress into the minds of the jury that the credibility of the testifying officers has been ruled on by the trial court.

(*Id.* at 86-88) (record references omitted)

Based on its findings, and applying the *Strickland* standard and relevant state law to petitioner's claims, the state court concluded—

7.      Applicant has failed to prove that the counsel failed to require the State to present sufficient evidence.

8.      Applicant has failed to prove that counsel failed to timely object to the admission of the handgun.

9.      Applicant has failed to prove that counsel failed to properly request an instruction on the admission of the handgun.

10.     Applicant has failed to prove that counsel failed to properly cross-examine the State's witnesses.

11.     Applicant has failed to prove that he told counsel Cowden and Howard could present evidence beneficial to his defense.

12.     Counsel's argument that the jury should have heard from Cowden and Howard in an effort to have them consider the drugs may have belonged to another party was the result of reasonable trial strategy.

13.     Applicant has failed to prove that counsel's representation was deficient for not interviewing Cowden and Howard.

14.     Counsel's decision to not request a special instruction on illegal detention was the result of reasonable trial strategy.

15.     Counsel's decision to not request a special instruction on illegally obtained evidence was the result of reasonable trial strategy.

16.     Proper jury argument encompass one of the following: (1) summation of the evidence presented at trial; (2) reasonable deductions drawn from that evidence; (3) answers to the opposing counsel's argument; and (4) pleas for law enforcement.

17.     Applicant has failed to prove that the jury arguments were improper.

18.     Counsel's decision to not object to the State's argument was the result of reasonable trial strategy.

19.     Applicant has failed to prove that his trial counsel's representation fell below an objective standard of reasonableness.

20.     A party fails to carry his burden to prove ineffective assistance of counsel where the probability of a different result absent the alleged deficient conduct sufficient to undermine confidence in the outcome is not established.

21.     Applicant has failed to show that there is a reasonable probability that the result of the proceeding would have been different had counsel objected to the evidence differently.

22.     Applicant has failed to show that there is a reasonable probability that the result of the proceeding would be different had counsel cross-examined the witnesses differently.

23.     Applicant has failed to show that there is a reasonable probability that the result of the proceeding would have been different had counsel presented Cowden and Howard to testify.

24.     Applicant has failed to show that there is a reasonable probability that the result of the proceeding would have been different had counsel requested a special instruction on illegal detention.

25.     Applicant has failed to show that there is a reasonable probability that the result of the proceeding would have been different had counsel requested a special instruction on illegally obtained evidence.

26.     Applicant has failed to show that there is a reasonable probability that the result of the proceeding would have been different had counsel objected to the State's jury argument.

27.     Applicant has failed to show that there is a reasonable probability that, but for the alleged acts of misconduct, the result of the proceeding would have been different.

(01State Habeas R. at 88-90) (citations omitted)

        In turn, the Texas Court of Criminal Appeals denied relief based upon the habeas court's findings. (*Id.* at cover)  This constitutes an adjudication on the merits of the claims and is entitled to the presumption of correctness, absent clear and convincing evidence in rebuttal.  28 U.S.C. § 2254(e)(1).

15

Having reviewed the record in its entirety, and deferring to the state habeas court's factual findings, the state courts' determination of petitioner's claims was neither unreasonable in light of the evidence before the state courts nor contrary to federal law on the issues. Conclusory allegations in support of a claim of ineffective assistance of counsel are insufficient to meet *Strickland* standards. *Green v. Johnson,* 160 F.3d 1029, 1042 (5th Cir. 1998). Failure to produce affidavits (or similar evidentiary support) from uncalled witnesses is fatal to the claim of ineffective assistance. *Sayre v. Anderson,* 238 F.3d 631, 636 (5th Cir. 2001). Further, federal habeas courts are not to lightly second-guess counsel's decisions on matters of tactics and generally entrust such matters to the professional discretion of counsel. Indeed, "[s]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." *Strickland,* 466 U.S. at 690. Nor may counsel be deemed ineffective for failing to file frivolous motions or raise frivolous objections at trial. *United States v. Gibson,* 55 F.3d 173, 179 (5th Cir. 1995); *Clark v. Collins,* 19 F.3d 959, 966 (5th Cir. 1994).

## II. RECOMMENDATION

Based on the foregoing, it is recommended that petitioner's petition for writ of habeas corpus be denied.

### III. NOTICE OF RIGHT TO OBJECT TO PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATION AND CONSEQUENCES OF FAILURE TO OBJECT

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of this report and recommendation must file specific written objections within 10 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). The court is extending the deadline within which to file specific written

objections to the United States Magistrate Judge's proposed findings, conclusions, and recommendation until October __21__, 2012. In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

## IV. ORDER

Under 28 U.S.C. § 636, it is ordered that each party is granted until October __21__, 2012, to serve and file written objections to the United States Magistrate Judge's proposed findings, conclusions, and recommendation. It is further ordered that if objections are filed and the opposing party chooses to file a response, a response shall be filed within seven (7) days of the filing date of the objections.

It is further ordered that the above-styled and numbered action, previously referred to the United States Magistrate Judge for findings, conclusions, and recommendation, be and hereby is returned to the docket of the United States District Judge.

SIGNED October __1__, 2012.

JEFFREY L. CURETON
UNITED STATES MAGISTRATE JUDGE

17